UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ERIC JAY POLANSKY *et al.*,

                Plaintiffs,

    v.                                   CAUSE NO. 3:23cv796 DRL

FOREST RIVER, INC. *et al.*,

                Defendants.

<u>OPINION AND ORDER</u>

In a more complex purchase than usual, Eric Polansky and then Paradise Motors of Elkton, Inc. bought a 2021 Forest River Berkshire XLT from Specialty Auto Sales in Canal Winchester, Ohio. Mr. Polansky originally signed sales documentation, only four weeks later to restructure the deal for Paradise to buy the unit, enter into a bill of sale, and receive title. Paradise, through Mr. Polansky who drove the unit, experienced problems with the transmission and engine warning lights.

After unsuccessful repair attempts, they both sued Forest River, Inc., Freightliner Custom Chassis Corporation (FCCC), and Cummins, Inc. in the Southern District of Ohio, and Forest River successfully transferred the case here. Once choice of law was decided, Mr. Polansky and Paradise conceded summary judgment against Forest River (preserving the right to appeal). FCCC and Cummins subsequently moved for summary judgment on all remaining claims. The court grants FCCC's motion and Cummins's motion only in part.

BACKGROUND

Eric Polansky made an "impulse purchase" when he signed sales documentation for a 2021 Forest River Berkshire XLT on October 2, 2021 for $375,494.50 from Specialty Auto Sales [124-4; 131-2 Tr. 18-19; 131-1 Tr. 14-15; 124-2 Tr. 64-65]. He didn't look at any advertisements or warranties before signing the paperwork "within a few minutes" [124-2 Tr. 64-66]. Mr. Polansky later requested that the title be placed in his business's name, Paradise Motors of Elkton, Inc., and a bill of sale and second title issued in Paradise's name [35-1, 126-6].

FCCC manufactured the chassis and provided a limited warranty [126-11 § 2.2].[1] The warranty excluded any non-DTNA (Daimler Trucks North America) engine, its components, and Allison manufactured transmissions [*id.* §§ 2.12, 2.21].[2] Specifically, it said, "Coverage does not include Allison transmissions or Eaton Hybrid transmissions" [*id.* § 2.21]. Mr. Polansky admits that the issues with the engine module and transmission are not covered under FCCC's warranty [131 ¶ 10].

Cummins manufactured and warranted the engine [124-7]. Its warranty covered "new electronic diesel Engines sold by Cummins Inc., hereafter 'Cummins,' and delivered to the first user on or after August 1, 2005, that are used in recreational vehicle applications in the United

---

[1] Section 2.2 reads: "Note: Basic Chassis applies to Freightliner Custom Chassis Corporation (FCCC) products; Basic Vehicle applies to Freightliner, Western Star, and Thomas Built Bus (TBB) products. Coverage includes all factory-installed components of the chassis/vehicle that are not excluded elsewhere in the Warranty or described as having a different time, or distance, or hours, or listed separately on each new vehicle coverage table. Also excluded are components warranted directly by component manufacturer."

[2] Section 2.12 reads: "Coverage includes the entire gasoline, compressed natural gas (CNG), or liquefied petroleum gas (LPG) engine as supplied by the engine manufacturer for failures resulting from defects in materials and workmanship under normal use and service. The engine must be maintained and serviced according to the applicable engine maintenance schedule from the FCCC Operator's and Maintenance Manual. *Excludes attachments not supplied by the engine manufacturer, repairs due to accident, misuse or abuse, misapplication, damage, negligence, modification, normal wear and tear, and normal maintenance and operating expenses.*"

States or Canada" [*id.* 2]. The warranty expressly covered "any failures of the Engine which result, under normal use and service, from a defect in the material or factory workmanship (Warrantable Failure)" [*id.*].

The RV began to experience loss of power issues on every trip [124-2 Tr. 10-11, 35]. When this happened, a warning light would come on, and the RV would lose power, slow down, and fail to shift properly until Mr. Polansky (who drove the unit owned by Paradise) pulled over, turned off the vehicle, and waited a certain amount of time [*id.* Tr. 10-12]. The problem hasn't stopped Mr. Polansky from driving the RV, but he thinks the vehicle is unsafe to drive [*id.* Tr. 27-29, 63]. The problems result from a miscommunication between the engine module and the Allison transmission module [126-16 Tr. 142-45].

Paradise (through Mr. Polansky) took the RV to Freightliner Western Star of Lancaster (Freightliner), a servicer, for repair on November 24, 2021 [124-8 at 1]. Freightliner initially drove the RV and couldn't duplicate the issue Mr. Polansky had experienced while driving it; but after connecting the RV to a computer, it found an engine software issue and updated the engine control module (ECM) from KP10026.09 to KP10026.14 [*id.*]. Freightliner then drove the RV without issue [*id.*]. Paradise accepted the returned RV [*id.*].

 Paradise brought the RV back to Freightliner on March 7, 2022 with the same problem [124-9 at 2]. Although Freightliner couldn't duplicate the issue, it again updated the engine calibration after speaking with Cummins [*id.* 3]. The issue didn't resurface during the test drive, so Freightliner then returned the RV with instructions to return the RV to the shop if the code popped up again so that the company could further diagnosis the issue [*id.*].

On June 21, 2022, Paradise took the RV back to Freightliner for a third time still having the same problem [124-10 at 2]. After driving the vehicle, Freightliner was unable to replicate the issue, and it verified with Allison, the transmission company, that the calibration and transmission control module were both up to date [*id.* 3]. Paradise accepted the RV, but Freightliner left the work order open, potentially to allow the company to bring the vehicle back if the same problem reappeared [124-10; 124-11 Tr. 59]. If the issue didn't reappear during the test drive, Freightliner generally considered the issue resolved [124-11 Tr. 83-84].

In September, Paradise returned with the same issue, and Freightliner discovered that Allison hadn't provided the correct update number [124-10 at 3]. It then removed the transmission control module (TCM) from the vehicle and sent it to Allison to be updated [*id.*]. Once the updated TCM returned, Freightliner put it back into the vehicle, verified the RV was working, and returned the RV [*id.*].

In late September 2022, Cummins and FCCC reached out to offer a new potential solution: a prototype calibration that Cummins would install at no charge [124-12 Tr. 20, 85-86]. FCCC and Cummins explained this to Mr. Polansky's son who began assisting his father [*id.*; 131-2 Tr. 100-01]. But there was a catch: the prototype installation would come with a Field Test Agreement because it hadn't been EPA approved [124-15 at 1]. The agreement contained a "hold harmless" provision that would have waived warranties, and Paradise (and Mr. Polansky) found it unacceptable and refused to sign [131-2 Tr. 101-04]. That was the "end of the discussions" between the parties [*id.* Tr. 104].

The prototype was formally approved in November 2023 and released as a production calibration [124-12 Tr. 110]. Mr. Polansky and Paradise refused the approved fix because this litigation was ongoing [131 ¶ 40].

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

A. *FCCC.*

1. *Agreed Dismissal.*

The plaintiffs have agreed to dismiss the express warranty claim and the Ohio Deceptive Trade Practices claim against FCCC under Rule 41. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii). Because this isn't a proposed dismissal of the entire action, Rule 41 doesn't apply. *See Taylor v. Brown*, 787 F.3d 851, 857-58 (7th Cir. 2015). Rule 15 instead authorizes a pleading's amendment that drops singular parties or claims, and the court freely gives leave when justice so requires—not least when parties stipulate. *See id.* at 858; Fed. R. Civ. P. 15(a)(2).

As written, the rules could prove terribly inefficient for counsel and clients if they were required to file an amended complaint, thereby triggering a new answer, just to perform the simple task of removing a claim or party that everyone agrees has turned out immaterial to the suit, not least forgetting the longstanding tradition of pursuing this relief in many federal courts facilely under Rule 41(a). So the court deems these amendments (by deletion rather than interlineation) effectuated through this order without need to file amended pleadings.

Accordingly, the court will approve the stipulation and dismiss the ODTPA and express warranty claims against FCCC, albeit by way of amendment instanter under Rule 15.

2. *Implied Warranty.*

Paradise maintains an implied warranty claim against FCCC. FCCC argues this claim fails because there is no privity between the parties. Paradise argues that there is privity between the parties for an implied warranty claim. "In Ohio, privity must exist to sustain a contract-based

6

implied warranty claim." *Litsinger v. Forest River, Inc.*, 536 F. Supp.3d 334, 361-62 (N.D. Ind. 2021) (citing *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007)).

An implied warranty of merchantability arises by operation of law. Under Ohio law, unless excluded, a "warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ohio Rev. Code § 1302.27(A). Ohio has considered a warranty between a manufacturer and consumer as collateral to the sales agreement between the consumer and dealer, and thus "not a contract [that] incorporates the [UCC's] concepts of warranty." *Haynes v. George Ballas Buick-GMC Truck*, 1990 Ohio App. LEXIS 5661, 17-18 (Ohio Ct. App. Dec. 21, 1990). A distant consumer cannot sustain a UCC-based implied warranty claim against the manufacturer without privity. *See id.*; *see also Curl*, 871 N.E.2d at 1147 (calling this "longstanding Ohio jurisprudence"); *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's, Enters.*, 50 N.E.3d 955, 962 (Ohio Ct. App. 2015) (same). "[V]ertical privity exists only between immediate links in the distribution chain." *Curl*, 871 N.E.2d at 1148.

Ohio law recognizes two circumstances under which a consumer who purchased a product from a dealer comes into privity of contract with the distant manufacturer: when an agency relationship exists between the manufacturer and dealer, or when the consumer is an intended third-party beneficiary to the contract between the manufacturer and dealer. *Bobb Forest Prods., Inc. v. Morbark Indus., Inc.*, 783 N.E.2d 560, 576 (Ohio Ct. App. 2002); *see also Curl*, 871 N.E.2d at 1148. Paradise argues that this case fits both. FCCC says neither applies. The court addresses each theory.

To create an agency relationship, a party must show that "(1) the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or

knowingly permitted the agent to act as having such authority; and (2) the person dealing with the agent knew of the facts, and acting in good faith, had reason to believe and did believe that the agent possessed the necessary authority." *Aluminum Line Prods. Co. v. Rolls-Royce Motors*, 649 N.E.2d 887, 893 (Ohio Ct. App. 1994). The mere act of selling a product manufactured by a different business doesn't establish an agency relationship. *Curl*, 871 N.E.2d at 1148. The test is instead "whether the [manufacturer and dealer] agree that [the dealer's] duty is to act primarily for the benefit of the one delivering the goods to [the dealer] or is to act primarily for [the manufacturer's] own benefit." *Id.* Still, vertical privity normally requires "immediate links in the distribution chain." *Id.*

Here the distribution chain is separated by several degrees. FCCC manufactured the chassis and sold it to Forest River, who then manufactured the RV and sold it to Specialty Auto Sales, who then sold the RV to Paradise (once the deal was revised). Nothing establishes privity between FCCC and Paradise. Forest River could have put the chassis on any number of vehicles before selling it [131-12 Tr. 120-21]. *See Curl*, 871 N.E.2d at 1148 (no privity between dealer and manufacturer, even when dealership held itself out as a Volkswagen dealership). Paradise presents no evidence that FCCC was involved in the sales transaction; in fact, Mr. Polansky testified that he knew about Allison (the transmission company) and Cummins at the time of the sale but didn't mention FCCC [126-2 Tr. 65-67]. There was no agency relationship here.

Paradise next argues that it was the "intended third-party beneficiary" of FCCC's warranty. "A third-party beneficiary is one for whose benefit a promise is made, but who is not a party to the contract encompassing the promise." *Bobb Forest*, 783 N.E.2d at 576. "An intended beneficiary is one who has enforceable rights under the contract, in contrast to an incidental

beneficiary, who has no rights of enforcement." *Berge v. Columbus Cmty. Cable Access*, 736 N.E.2d 517, 532 (Ohio Ct. App. 1999). Ohio uses an "intent to benefit" test, "if the promisee intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract." *Bobb Forest*, 783 N.E.2d at 576. Still, the "mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." *Id.* (citation omitted).

For example, in *Bobb Forest*, Morbark, a company manufacturing a sawmill, and McCormick, the company purchasing the sawmill, had a sales contract. *Id.* McCormick was an authorized dealer of Morbark sawmills, and it approached the third-party, Bobb Forest Products, Inc., seeking to sell a Morbark sawmill. *Id.* at 566. Bobb Forest talked to a Morbark representative and decided to purchase a Morbark sawmill from McCormick. *Id.* There, the Ohio court determined that "Morbark knew it was manufacturing the sawmill for BFP's ultimate use and McCormick purchased the sawmill from Morbark only after he knew BFP would purchases it from him." *Id.* at 576. The company didn't mass produce sawmills, and it "knew exactly whom the ultimate customer . . . would be." *Id.*

This third-party beneficiary exception has been construed narrowly, with courts hesitating to extend it. *See, e.g.*, *McKinney v. Bayer Corp.*, 744 F. Supp.2d 733, 758 (N.D. Ohio 2010) (court declining "to extend the limited privity exception articulated in *Bobb Forest* beyond the facts of that case."); *Perry v. Ethicon*, 2022 U.S. Dist. LEXIS 56268, 14-15 (S.D. Ohio Mar. 29, 2022) (citing

*Bobb Forest* to highlight the conflicting Ohio law precedent before noting that nothing put the defendant "on notice" of the specific recipient and declining to apply the exception).

FCCC isn't substantially similar to McCormick in *Bobb Forest*. FCCC manufactured the chassis for Forest River, who put it into an RV before selling it to Specialty Auto, the dealer who eventually sold it to Paradise. As FCCC points out, the RV wasn't made to order like in *Bobb Forest*; instead, Mr. Polansky signed sales documentation on an impulse at a horse show before amending the deal for title to go to Paradise. FCCC had no way of knowing the final customer. FCCC didn't make the chassis to order, didn't know Paradise's specific needs, and didn't know the ultimate consumer. *See Bobb Forest*, 783 N.E.2d at 576. This narrow exception doesn't establish privity. Without privity, there is no valid implied warranty claim against FCCC, and the court grants summary judgment for FCCC.

     3. *Ohio Lemon Law.*

Mr. Polansky and Paradise both sue FCCC under Ohio's lemon law.[3] Ohio's lemon law was "designed to protect consumers from chronically defective" vehicles and requires "new vehicles to live up to warranties given by manufacturers." *Royster v. Toyota Motor Sales, U.S.A.*, 750 N.E.2d 531, 533 (Ohio 2001); *see also* Ohio Rev. Code §§ 1345.71 *et seq*. To prevail on a lemon law claim, a plaintiff must establish, "(1) he/she was the owner of a vehicle covered by a written warranty; (2) the motor vehicle does not conform to the applicable expressed warranty; (3) he/she reported the non-conformity to the manufacturer or manufacturer's authorized dealer within one year following the original date of delivery or the first eighteen thousand miles of operation,

---

[3] The plaintiffs' response brief suggests they have also brought this claim against Cummins [130 at 23], but the complaint only alleges that Forest River (now dismissed) and FCCC violated Ohio's Lemon Law [35 ¶ 53].

whichever is earlier; and (4) the manufacturer or authorized dealer was unable to conform the motor vehicle to the express warranty by repairing or correcting a defect that substantially impaired the use, safety, or value of the motor vehicle, after a reasonable number of repair attempts." *Iams v. Daimler Chrysler, Corp.*, 883 N.E.2d 466, 470 (Ohio. Ct. App. 2007).

FCCC argues that Paradise can't establish a claim under the Ohio lemon law because FCCC didn't warrant the engine or transmission in its express warranty [126-11 §§ 2.12, 2.21]. Paradise says FCC warranted the chassis, so the written warranty element is met [126-11 § 1.1]. But Paradise ignores that its problem was with the engine and Allison transmission, both things that even Paradise admits FCCC's warranty excluded [131 ¶ 6-7].[4] No reasonable jury could conclude that a warranty that explicitly excluded coverage for the defective parts was an express warranty covering those same parts. Nor can Mr. Polansky sue under the Ohio lemon law for the same reason, even if the law might construe him, even momentarily, as a consumer or owner entitled to pursue such a claim. *See* Ohio Rev. Code § 1345.71(A). The court thus grants summary judgment for FCCC on the Ohio lemon law claim.

    4. *Magnuson-Moss Warranty Act (MMWA).*

Paradise's MMWA claim rises and falls with state warranty claims. *See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (MMWA "does not provide an independent basis for liability; it only provides for federal jurisdiction for state claims"); *see also Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011) (MMWA operates only "as a gloss on . . . state law

---

[4] Mr. Polansky and Paradise also briefly argue that it doesn't matter what the FCCC warranty says because Cummins also warranted the engine, and Ohio law refers to "any warranty." Ohio Rev. Code § 1345.72. Although some Ohio courts have allowed this kind of broad interpretation for final assemblers, *Rothermel v. Safari Motor Coaches*, 1994 U.S. Dist. LEXIS 21591 ,7-8 (N.D. Ohio July 29, 1994), that broad interpretation doesn't apply to component manufacturers like FCCC, *Sirlouis v. Four Winds Int'l Corp.*, 2012 U.S. Dist. LEXIS 43347, 38-40 (N.D. Ohio March 29, 2012).

breach of warranty claims."). Because Paradise's state warranty claims against FCCC fail, the MMWA claim against FCCC also fails. The court grants summary judgment for FCCC on the MMWA claim.

     5.  *Ohio Consumer Sales Practice Act.*

Mr. Polansky also brings a claim against FCCC under the Ohio Consumer Sales Practice Act, citing Paradise's three other claims (breach of implied warranty, violation of MMWA, and violation of Ohio's lemon law). He relies, derivatively, only on the three other claims as a basis for this claim and cites no other potential violations. Because the court has granted summary judgment on the other claims, there aren't any OCSPA alleged violations left for a reasonable jury to find against FCCC. The court thus grants summary judgment for FCCC on all claims.

     B.  *Cummins.*

     1.  *Express Warranty.*

Cummins warranted the RV's engine [124-7]. The warranty said Cummins would pay "for all parts and labor needed to repair the damage to the Engine resulting from a Warrantable Failure" [*id.* 2]. The warranty included requirements for the owner: "Before the expiration of the applicable Warranty, Owner must notify a Cummins distributor, authorized dealer or other repair location approved by Cummins of any Warrantable Failure and make the Engine available for repair by such facility. Except for Engines disabled by a Warrantable Failure during the first year after the date of delivery of the Engine to the first user, Owner must also deliver the Engine to the repair facility." Cummins argues that Paradise cannot establish a defect or warrantable failure and didn't afford Cummins a reasonable opportunity to repair the defect.

Express warranty claims under Ohio law require plaintiffs to prove "[1] the item at issue was subject to a warranty; [2] the item did not conform to the warranty; [3] the seller was given reasonable opportunity to cure any defects; and [4] the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Temple v. Fleetwood Enters.*, 133 F. Appx. 254, 268 (6th Cir. 2005). Under Ohio law, a "consumer bears the burden of presenting evidence from which a reasonable inference can be made that a specific problem with the vehicle is due to a defective part which is covered by the warranty." *Reddin v. Toyota Motor Distribs, Inc.*, 1991 Ohio App. LEXIS 712, 14 (Ohio Ct. App. Feb. 22, 1991).

Cummins argues that Paradise cannot establish a warrantable defect because Paradise lacks evidence of a warrantable failure. It makes this argument largely by citing *Miller v. Daimler Chrysler Motors Corp.*, 2001 Ohio App. LEXIS 2450, 10 (Ohio Ct. App. May 31, 2001), comparing the defect to the "intermittent groaning, grinding noise" in that case. In *Miller*, the court reviewed a directed verdict after trial and found "no evidence in the record that the vibrations and noise substantially impair[ed] the use, value, or safety of the motor vehicle" or that "it affected the engine, drive train, or mechanical functioning" *Id.* The noises alone weren't accompanied by "functional impairment," so they weren't circumstantial evidence of a defect. *Id.* at 11. Cummins ignores this portion of the court's analysis and focuses instead on the fact that repairs were performed free of charge under the warranty. *Id.* at 13. That mattered in *Miller* because the plaintiff couldn't connect the noises to the underlying problem and needed more evidence connecting the superficial issue (the noise) to "a defect in material, workmanship or factory preparation covered by the warranty." *Id.* The *Miller* court still recognized that "symptoms may be circumstantial evidence of a defect." *Id.* at 12; *see also McGuire v. Am. Suzuki Motor Corp.*, 2004

Ohio App. LEXIS 6302, 14 (Ohio Ct. App. Dec. 9, 2004) (viable cause of action "when a noise or vibration felt during the warranty period was accompanied by a failure of the vehicle to start, even when there was no diagnosis of the cause of said failure during the warranty period").

This case isn't about a superficial annoyance of a noise. Instead, Mr. Polansky testified about the engine defect that caused the RV to slow down and lose power [124-2 Tr. 10-12]. Unlike mere noises, this record reflects a defect that a reasonable jury could find impaired the use and "affect[ed] the safety" of the RV. *Miller*, 2001 Ohio App. LEXIS 2450 at 10-11. A reasonable jury could conclude that the engine issue isn't a symptom; rather a jury could call it a defect. And this record contains enough evidence for a reasonable jury to conclude that it impacted the RV's safety and use.

Cummins next attacks Paradise's opinion witnesses (Jackie Winters and Gary Derian) on the issue of causation, rather than filing separate *Daubert* motions. Cummins argues that these witnesses have no experience in evaluating calibration issues in Cummins' engines. *See Temple v. Fleetwood Enters.*, 133 F. Appx. at 259-60. Paradise doesn't cite Mr. Winters in its opposition to summary judgment, so the court doesn't address him.

Mr. Derian testified that the ECM (engine control module) and TCM (transmission control module) were faulty, as his report documents a "defective ECM/TCM system that caused it to regularly fault and go into limp mode" [131-13 Tr. 75-76; 131-21 at 5]. Cummins calls this a "bald conclusion" and compares it to *Temple v. Fleetwood Enter.*, 2003 U.S. Dist. LEXIS 26507, 14-15 (S.D. Ohio Sept. 23, 2003). This comparison is inapt. In *Temple*, the plaintiff tried to assert, with no other evidence, that "the fuel injector line leaks created a condition that was likely to cause death or serious bodily injury if the vehicle was driven." *Id.* at 14. Mr. Derian isn't just a

plaintiff, and his report explains the RV's functioning and the trouble code he encountered during his inspection [131-21 at 3-4]. It's true that he wasn't able to replicate the problem during a test drive, but his report is certainly more than a bare assertion by a plaintiff. It doesn't lack facts supporting the opinion that the defect caused the problems, and any slight gaps would be appropriate for cross-examination, not exclusion. Mr. Derian explained how the TCM and ECM need to communicate "to reduce the engine torque" and noted that interrupted communication prevented that from happening here [131-21 at 3]. Mr. Derian's testimony and report are sufficient to create an issue of fact on the defect that the jury must decide at trial, rather than the court at summary judgment—particularly with no *Daubert* motion challenging the proposed analysis or opinion.

In addition to Mr. Derian's testimony and Mr. Polansky's testimony about his experience with the defect, Cummins' own witness identified that the "engine was not responding and providing the proper percentage of torque" [124-14 Tr. 53]. He testified that the RV would continue to experience loss of power, gear shifting problems, and the illumination of the transmission light until the new calibration is installed [131-5 Tr. 58]. Cummins argues that interpreting this as conceding that there was a defect is "a blatant mischaracterization of his testimony," but that invitation to reweigh testimony or to draw inferences in favor of Cummins is precisely what the court may not do at summary judgment. A reasonable jury could certainly interpret this as describing a defect caused by the engine. There is an issue of material fact on causation.

Cummins next argues that Paradise didn't give it a reasonable number of repair attempts because, it argues, the record shows only two "meaningful" attempts to repair. Paradise counters

that the record shows at least four times it presented the RV for repair. The law requires plaintiffs to give warrantors at least two chances to cure a defect. *See Temple*, 133 F. Appx. at 268 (at least two attempts); *Malkamaki v. Sea Ray Boats, Inc.*, 411 F. Supp.2d 737, 745 (N.D. Ohio 2005) ("Magnuson-Moss sets forth a minimum of two attempts by the warrantor to cure a defect as satisfying the reasonableness requirement."); *Abele v. Bayliner Marine Corp.*, 11 F. Supp.2d 955, 961-62 (N.D. Ohio 1997) (one repair attempt not enough). But the purchaser isn't required "to permit the seller to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty." *Abele*, 11 F.Supp.2d at 960. It is "irrelevant" whether the dealer could actually discover the defective part. *Reddin*, 1991 Ohio App. LEXIS 712 at 17.

All agree that Paradise presented the RV for repair on November 24, 2021 and March 7, 2022 [SOF ¶ 16, 18-20, 23]. On both occasions, Cummins updated the calibration, and Paradise accepted the RV [*id.*]. All seems to agree, and certainly the record permits the inference, that, after these two attempts, the unit had not been fixed. Without discussing any more attempts, this would suffice to permit a reasonable jury to find that Cummins had been given a reasonable opportunity to cure. Cummins at times reverts from Ohio law to Indiana law to allude to a different standard, but Ohio law applies to this claim.

Even so, the jury will hear about other opportunities that Cummins had too. The third visit occurred on June 21, 2022, for the same loss of power issue with the engine [131-5 at 6]. Paradise took the RV to Freightliner Western Star, the same location it had previously taken the RV twice [*id.*]. The servicer documented that there was an "inactive code for torque management feedback signal A, P2637-00" [*id.*]. It began troubleshooting and called Allison, but everything looked up to date, and the servicer couldn't find a problem [*id.* 6-7]. On September 19, 2022,

Paradise returned with the same issue for a fourth time, and the servicer discovered that the TCM needed to be updated by Allison [*id.* 7]. The servicer then reinstalled the TCM on the chassis, test drove the vehicle, and returned it to the customer [*id.*]. Cummins acknowledges these happened, but it disputes whether they were "meaningful" repair attempts. In short, on this record, that is an argument it may present to a jury, but it will not secure summary judgment.

After this fourth visit to the servicer, Cummins proposed installing a data logger and an updated ECM calibration that was still in field testing [131-17 at 1; 131-2 Tr. 57-58]. The proposed field test agreement would have waived all warranties for a service provided on an "AS-IS, WHERE IS basis" [124-16 at 2]. It imposed new notification obligations on the consumer, and it had not yet been EPA approved [*id.*]. Paradise refused to sign the agreement based on the new conditions, and Cummins did not offer other repair solutions [131-2 Tr. 100-105].

Cummins argues these two visits shouldn't count because the focus was on the Allison transmission, and Allison instructed the servicer to send it the TCM for updating [131-5 at 6-7]. In September 2022, even Cummins admits it became involved in trying to fix the issue [131-6 Tr. 84]. Cummins also has documentation from September 27, 2022 logging a complaint and noting that both the "[t]ech and customer have called for this before" [124-13 at 5]. On this record, Cummins hasn't shown that no reasonable jury could conclude that the four visits, all to a Cummins approved servicer for the same engine defect, wouldn't count as at least two attempts at repair.

As a final argument, Cummins faults Paradise for not accepting the proposed experimental suggestion in September 2022. It argues that Paradise, by not accepting the fix, impeded Cummins' ability to repair the RV and says a plaintiff refusing to contact a manufacturer

isn't providing a reasonable opportunity to repair. *See Risner v. Regal Marine Indus.*, 8 F. Supp.3d 959, 990 (S.D. Ohio 2014). Critically, *Risner* was a bench trial, and the court was in the position to decide factual disputes. *Id.* at 963. The court cannot wade through the record to determine who is right at the summary judgment phase. *Payne*, 337 F.3d at 770. On this record, a reasonable jury could conclude that Cummins already had at least two opportunities—that is, its reasonable opportunity to cure under Ohio law—and a consumer need not wait forever. There remains a factual question about whether Cummins' suggested repair, the new calibration, would even cure the defect. Cummins' documents describe it only as reducing the problem's occurrence, not curing it [131-14]. And, with the conditions attached to the repair, a reasonable jury could find that not agreeing to an experimental repair wasn't denying Cummins a fifth opportunity. Both causation and defect must be determined by a jury, so the court denies summary judgment on the express warranty claim against Cummins.

      2. *Implied Warranty.*

      Cummins next argues that Paradise's implied warranty claim fails as a matter of law— both because the parties are not in privity and because Cummins' express warranty disclaimed implied warranties.[5] Paradise responds that privity exists between the two parties because the dealership was acting as Cummins' agent when it sold the engine in the RV. As the court has already explained, "vertical privity exists only between immediate links in the distribution chain." *Curl*, 871 N.E.2d at 1148. Cummins manufactured the engine, which then went into the FCCC chassis, then into the Forest River RV, then to Specialty Auto, then to Mr. Polansky/Paradise. This link is even more attenuated than between FCCC and Paradise. No reasonable jury could

_____

[5] Because the court finds that the parties aren't in privity, it doesn't address this second argument.

conclude that Specialty Auto was acting as an agent of Cummins. No privity exists under the agency theory.

Paradise next argues that it was the intended third-party beneficiary of the warranty. *Bobb Forest*, 783 N.E.2d at 576. This limited exception provides a way around the privity requirement in implied warranty claims in very narrow circumstances when the manufacturer knows and specifically contemplates the intended beneficiary of a sales contract between two parties. *Id.* In *Bobb Forest*, Mobark, the manufacturer, intentionally made a product knowing exactly who "the ultimate consumer" would be and what that consumer's needs and requirements were. *Id.* Ohio courts have been reluctant to extend the exception beyond those exact circumstances, particularly after the Ohio Supreme Court emphasized privity's importance in *Curl*, 871 N.E.2d at 1148. *See McKinney*, 744 F. Supp.2d at 758 (court declining "to extend the limited privity exception articulated in *Bobb Forest* beyond the facts of that case."); *Perry*, 2022 U.S. Dist. LEXIS 56268 at 14-15 (citing *Bobb Forest* to highlight the conflicting Ohio law precedent before noting that nothing put the defendant "on notice" of the specific recipient and declining to apply the exception).

The exception is designed to allow a particular known consumer to clear the privity hurdle. Merely conferring "some benefit on the supposed beneficiary by the performance of a particular promise in a contract is insufficient." *Bobb Forest*, 783 N.E.2d at 576. It is an individualized exception, not one intended to allow classes of consumers to dodge an otherwise critical element of an implied warranty claim. Cummins' warranty broadly applies to the engines it manufacturers; it isn't tailored to individually anticipated consumers. Unlike the manufacturer in *Bobb Forest*,

Cummins had no information about the end consumer or specifically contemplated Paradise as that consumer. Instead, it warranted its product to the "first user" generally [124-7 at 2].

Paradise argues that because the express warranty was designed to benefit the "first user," then it, as the end purchaser, was clearly the intended beneficiary [124-7 at 2]. But viewing this exception this broadly, for any holder of an express warranty, would swallow the rule Ohio has narrowly crafted by allowing an implied warranty claim any time a consumer had an express warranty (particularly a pass-through warranty like this). That isn't what Ohio courts have done. *See Curl*, 871 N.E.2d at 1148; *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enters.*, 50 N.E.3d 955, 962 (Ohio Ct. App. 2015) (no privity even with express warranty claim); *Savett v. Whirlpool Corp.*, 2012 U.S. Dist. LEXIS 124086, 30-31 (N.D. Ohio Aug. 31, 2012) (no privity despite express warranty when the plaintiff failed to allege anything more than "an ordinary downstream consumer transaction"). Paradise doesn't provide the court with any case law of a similar situation, with this level of separation in the distribution chain, when an express pass-through warranty sufficiently established third-party beneficiary status, and the court likewise found none. Paradise may retain express warranty claims, but Cummins had no way to know that the engine it sold to FCCC would one day wind up in Paradise's motor home to characterize the company as a third-party beneficiary to Cummins' earlier sale up the chain of supply. *Perry*, 2022 U.S. Dist. LEXIS 56268 at 14-15. This is especially true when Mr. Polansky saw the RV and decided to purchase it first, before then assigning the title to Paradise later in the sale.

A reasonable jury could not make a third-party beneficiary finding here. Without privity, any implied warranty claim against Cummins fails. *See Ultimax, Inc. v. Mercedes-Benz USA, LLC*, 2008 U.S. Dist. LEXIS 28475, 25-26 (S.D. Ohio Apr. 8, 2008).

3.  *MMWA.*

The court has already held that a jury must decide Paradise's breach of express warranty claim against Cummins, so the MMWA claim remains as the vehicle for it. *See* 15 U.S.C. § 2310(d)(1). The court denies summary judgment on the MMWA claim.

4.  *Ohio Consumer Sales Practice Act (OCSPA).*

Mr. Polansky brings a claim for violation of the OCSPA. The OCSPA "prohibits unfair or deceptive sales tactics." *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 680 (6th Cir. 2017) (quotations omitted). It was designed to "protect consumers and eradicate deceptive trade practices" and requires a liberal interpretation. *Fletcher v. Don Foss of Cleveland, Inc.*, 628 N.E.2d 60, 63 (Ohio Ct. App. 1993). It guards against unfair or deceptive acts or practices "in connection with a consumer transaction… whether it occurs before, during, or after the transaction." Ohio Rev. Code § 1345.03.[6] The OCSPA includes a list of deceptive behaviors, ranging from misrepresenting prices and making knowingly misleading statements that the consumer was likely to rely on to knowingly taking advantage of a consumer's inability to understand an agreement. Ohio Rev. Code § 1345.03; s*ee also Conrad v. Winnebago*, 2008 U.S. Dist. LEXIS 29162, 13 (S.D. Ohio Apr. 9, 2008) (listing examples). Generally, "the act defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Lester v. FCA US LLC*, 2022 Ohio App. LEXIS 1659, 18 (Ohio Ct. App. May 27, 2022).

---

[6] "'Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev. Code § 1345.01(A).

A plaintiff must "show a material misrepresentation, deceptive act, or omission that impacted his decision to purchase the item at issue." *Temple*, 133 F. Appx. at 265 (quotations omitted). Ohio law recognizes there have been circumstances where a breach of contract or a breach of warranty has constituted a violation of the OCSPA, *Boyle v. Daimler Chrysler Corp.*, 2002 Ohio App. LEXIS 4367, 19 (Ohio Ct. App. Aug. 16, 2002), but "not every such breach will constitute a[n] OCSPA violation," *Wasserman v. Home Corp.*, 2008 Ohio App. LEXIS 4597, 6 (Ohio Ct. App. Oct. 23, 2008). A "breach of an express warranty would logically rise to the level of a [O]CSPA violation if the warranty were untrue, misleading, or not honored." *Clayborne v. Mercedes-Benz USA, LLC*, 2025 Ohio App. LEXIS 287, 34 (Ohio Ct. App. Jan. 31, 2025) (affirming summary judgment when the plaintiff "offered no evidence that he was deceived by his warranty"). Deceptive conduct must be "both false and material to the consumer transaction." *Lester*, 2022 Ohio App. LEXIS 1659 at 19.

Mr. Polansky claims that a reasonable jury could conclude that Cummins violated the OCSPA on three different theories. First, he argues that Cummins had a legal obligation to honor its warranty and failed to do so. Second, he argues that Cummins violated the OCSPA when it tried to have Paradise sign the FTA. Third, he argues that Cummins engaged in a pattern of stalling and evading its legal obligations under the warranty.

Mr. Polansky's first theory, that Cummins breached the warranty and thereby violated the OCSPA, fails without more. Mr. Polansky doesn't point to "anywhere in the record [where] Cummins somehow made a false representation to [Paradise] in relation to the engine." *Temple*, 133 F. Appx. at 267. He offers no evidence that the Cummins warranty deceived him; in fact, he concedes he never read the warranty [126-4 Tr. 65]. *See Clayborne*, 2025 Ohio App. LEXIS 287,

34-35 (granting summary judgment on OCSPA claim when the plaintiff testified he never read the warranty).

The second and third theories go together, as they both involve the proposed Field Test Agreement (FTA). Mr. Polansky accuses Cummins of being aware of the P2637 fault code months before Mr. Polansky purchased the RV and doing nothing to fix the issue, but the only evidence he cites suggests only that the defect code existed, not that Cummins knew Paradise's RV was defective [131-21 at 7; 131-14]. It also argues that a twelve-month repair time, the outlined timeline for the experimental prototype, was unreasonably long. Mr. Polansky attempts to impute a malicious intent onto Cummins that no reasonable jury could find on this record. The problem wasn't ultimately fixed, but the servicer updated the calibrations and successfully test drove the vehicle without issues after each repair. When Cummins figured out a solution, it offered it to Paradise through Mr. Polansky, along with the FTA, which Mr. Polansky doesn't dispute was required [131 ¶ 33]. Cummins couldn't help that the law required an FTA if the company didn't have EPA approval, *see* 40 C.F.R. § 85.1705(e) (requiring information on testing program), and no reasonable jury could conclude that following EPA protocol was unconscionable.

Finally, Mr. Polansky hasn't provided any evidence for a reasonable jury to conclude that Cummins maintained a pattern of inefficiency, incompetency, continual stalling, or evading its legal obligations, as was alleged in the complaint. *See Layne v. McGowen*, 1995 Ohio App. LEXIS 2120, 13-14 (Ohio Ct. App. May 24, 1995). He provides no evidence for a reasonable jury to conclude that Cummins failed to promptly attempt to complete repairs, and it would be impossible for a reasonable jury on this record to conclude the servicer, who at times could not

replicate the defect when driving the vehicle, must have been incompetent. Nothing suggests Cummins refused or tried to avoid repairing or servicing the motor home, or that Cummins otherwise tried to evade its legal obligations. The unit just didn't get fixed despites the company's opportunities and efforts. Mr. Polansky hasn't presented any evidence of a deceptive or unconscionable act here, so the court grants summary judgment on the OSCPA claim and doesn't reach Cummins' argument that Paradise's purchase wasn't a consumer transaction.

5. *Ohio Deceptive Trade Practices Act (ODTPA).*

Paradise pursues an ODTPA claim. An ODTPA claim has four elements: "(1) a false statement or statement that is misleading, (2) [the] statement actually deceived or has the tendency to deceive a substantial segment of the target audience, (3) the deception is material in that it is likely to influence a purchasing decision, and (4) the plaintiff has been or is likely to be injured as a result." *Torrance v. Rom*, 157 N.E.3d 172, 188 (Ohio Ct. App. 2020). The law requires the defendant to have made "a false representation of fact." *Ne. Ohio Coll. of Massotheraphy v. Burek*, 759 N.E.2d 869, 876 (Ohio Ct. App. 2001) (emphasis omitted).

Cummins argues that Paradise cannot show that Cummins made any false representations or deceived Paradise in the sale. Paradise points to two statutory provisions saying a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person… (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have… [or] (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Ohio Rev. Code §§ 4165.02(A)(7), (9).

It argues that by providing a warranty at the time of sale, Cummins represented that the RV came with a warranty on the engine, which it argues that it didn't have because Cummins was unable to repair the defect after four attempts. This doesn't work. Paradise cannot make a claim relying on an express warranty only to turn around and claim that Cummins falsely represented that a warranty existed. Cummins paid for multiple repairs. Just because a remedy might later fail doesn't mean the warranty never existed. A warranty isn't a guarantee. Though it might find a breach, a reasonable jury couldn't conclude that Cummins didn't warrant the engine.

Second, Paradise argues that Cummins knew about the RV fault code months before Mr. Polansky signed sales documentation for the RV, so falsely represented the RV was of a certain quality. To support this, Paradise points to its proposed expert, Mr. Derian, who opined that in his professional opinion the "motor coach was delivered with a defect in the engine/transmission system" [131-21 at 7] and that an update released in February 2021 "[i]mproves diagnostic capabilities" for the specific fault code [131-14]. Paradise overreaches with this argument. The mere existence of an error code doesn't equate to knowing that the RV was defective or knowledge that an experimental fix would be necessary. No reasonable jury could conclude, from the evidence Paradise submits, that Cummins knowingly misrepresented something about the RV. The court thus grants summary judgment for Cummins on the ODTPA claim and doesn't need to address Cummins' arguments about whether Paradise purchased the RV.

6. *Damages and Remedies.*

Cummins also argues that, even if a jury could find the company liable on any of the claims, the court should limit the available damages. First, Cummins argues that the warranty expressly limits any potential recovery and bars consequential and incidental damages [124-7 at

4]. The warranty makes clear that "CUMMINS IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES" [*id.*].

The MMWA prohibits limiting or excluding consequential or incidental damages for breach of any written or implied warranty "unless such exclusion or limitation conspicuously appears on the face of the warranty." 15 U.S.C. § 2304(a)(3). No reasonable jury could find that the bolded, capitalized warning of Cummins' warranty wasn't conspicuous. Paradise doesn't argue that it isn't, nor does Paradise argue the term of art that is "the face of the warranty." The only question is whether the disclaimer complies with Ohio law.

Ohio law permits limiting or excluding consequential damages "unless the limitation or exclusion is unconscionable." Ohio Rev. Code § 1302.93(C). Courts have held that "a contractual provision which excludes liability for consequential damages and limits the buyer's remedy to repair or replacement of the defective product is not unconscionable." *Chemtrol Adhesives v. Am. Mfrs. Mut. Ins.*, 537 N.E.2d 624, 639 (Ohio 1989) (citing cases); *see also Traxler v. PPG Indus.*, 158 F. Supp.3d 607, 615-16 (N.D. Ohio 2016) ("agreement may lawfully limit or alter the measure of damages recoverable . . . as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts. However, a warranty disclaimer that leaves a party with a defective product and no avenue for recourse against the manufacturer is unconscionable." (quotations omitted)).

Paradise ignores the disclaimer and responds instead that the warranty's remedy failed of its essential purpose. Under Ohio law, if an exclusive or limited remedy fails of its essential purpose, then consequential and incidental damages may still be available. *Traxler*, 158 F. Supp.3d at 613-14 (citing Ohio Rev. Code § 1302.89); *see also Nearhouse v. Volkswagen of Am., Inc.*, 536

N.E.2d 46, 49 (Ohio Ct. App. 197) (same). Remedies "generally fail only where the seller is unable or unwilling to make repairs within a reasonable time." *Chemtrol*, 537 N.E.2d at 639. Whether a remedy has "failed to fulfill its essential purpose is ordinarily a question of fact for the jury" unless "there is no evidence on which to base a finding that [the manufacturer] was unable or unwilling to repair and/or replace the defective system within a reasonable time." *Id.* at 639-40. "A limited or exclusive remedy can fail of its essential purpose if it deprives the purchaser of the substantial value of its bargain, leaving the purchaser without a remedy." *Traxler*, 158 F. Supp.3d at 614. Under Ohio law, a manufacturer has had a reasonable number of repair attempts if "the same nonconformity has been subject to repair three or more times and either continues to exist or recurs." Ohio Rev. Code § 1345.73(A)(1).

Cummins says Paradise had two choices: return the RV to the servicer or allow Cummins to update the calibration. Paradise argues that requiring Mr. Polansky to sign the FTA, failing to repair the defect over the course of four attempts, and failing to have a definitive fix even now could lead a jury to conclude that the warranty's remedy failed its essential purpose. If a "seller is subsequently unable or unwilling to repair or replace a defective part within a reasonable time, the buyer is left with a defective product—not conforming to the warranty—and the limited remedy has not achieved its purpose." *Goddard v. Gen. Motors Corp.*, 396 N.E.2d 761, 764-65 (Ohio 1979). Paradise has provided evidence for a reasonable jury to conclude that the defect remained after four unsuccessful repair attempts, and that is enough to at least create a question of fact for the jury. *Chemtrol*, 537 N.E.2d at 639. A jury must decide whether the remedy failed of its essential purpose, so the question of consequential damages must await trial.

Second, Cummins argues that the court should find that Paradise isn't entitled to revocation and rescission because there is no privity of contract. Ohio law requires "a direct buyer-seller relationship [to] exist in order for the remedy of revocation of acceptance to be available." *Aluminum Line*, 649 N.E.2d at 893 (citing cases). It similarly requires privity to rescind a contract. *Cremeans v. Robbins*, 2000 Ohio App. LEXIS 2753, 28 (Ohio Ct. App. June 12, 2000) (citing cases). The court has already held that Cummins and Paradise weren't in privity; and, without privity, revocation of acceptance and rescission aren't available as remedies to Paradise. The court thus grants summary judgment in part for Cummins and won't allow rescission or revocation of acceptance as a remedy.

CONCLUSION

Accordingly, the courts GRANTS the joint stipulation under Rule 15 [129], GRANTS FCCC's summary judgment motion [119], and GRANTS IN PART and DENIES IN PART Cummins' summary judgment motion [122]. Paradise has an express warranty claim (through the MMWA vehicle) against Cummins remaining for trial.

SO ORDERED.

June 13, 2025                                  *s/ Damon R. Leichty*
                                              Judge, United States District Court